# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jonathan F. Cadena-Gallegos,<br><br>          Petitioner,<br><br>    -v-<br><br>Pam Bondi, *Attorney General for the United States*; Kristi Noem, *Secretary of the Department of Homeland Security*; Todd M. Lyons, *Acting Director, United States Immigration and Customs Enforcement, in their official capacities*; Brian Flanagan, *Acting Deputy Field Office Director for ICE in New York City Area*, *in their official capacities*,<br><br>          Respondents. | 2:26-cv-844<br>(NJC) |

## MEMORANDUM AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

On February 12, 2026, Jonathan F. Cadena-Gallegos, who has resided in the United States for around two-and-a-half years and has no criminal history, filed this Petition seeking a writ of habeas corpus under 28 U.S.C. § 2241 to challenge the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). (Petition for Writ of Habeas Corpus ("Pet.") ¶¶ 1, 34, ECF No. 1.) That detention began on January 31, 2026, when ICE stopped Mr. Cadena-Gallegos on his way to work in Islip, New York and thereafter detained him first at 26 Federal Plaza, New York, New York until he was transferred to the Metropolitan Detention Center ("MDC") on February 2, 2026, where he currently remains. (Pet. ¶ 2; Response to Order to Show Cause ("Resp.") at 1, ECF No. 7.) The Petition argues that ICE's detention of Mr. Cadena-Gallegos without notice and opportunity to be heard violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution, 8 U.S.C. §§ 1225(b)(2) ("Section 1225(b)(2)") and 1226(a) ("Section 1226(a)"), and the Administrative Procedures Act ("APA"). The Petition seeks the

following relief: (1) a declaration that Mr. Cadena-Gallegos's detention violates the Due Process Clause of the Fifth Amendment and the APA; (2) a writ of habeas corpus requiring Respondents to immediately release Mr. Cadena-Gallegos; and (3) any further relief this Court deems just and proper. (Pet. at 11–12.).[1] For the reasons explained below, the Petition is GRANTED in part.

Respondents are federal government officials named in their official capacities: (1) Pam Bondi, Attorney General for the United States; (2) Kristi Noem, Secretary of the Department of Homeland Security; (3) Todd M. Lyons, Acting Director, United States Immigration and Customs Enforcement; and (4) Brian Flanagan, Acting Deputy Field Office Director for ICE in New York City Area.

Respondents have no objection to this Court deciding the Petition on the papers in lieu of a hearing. (Resp. at 1–2.) Respondents incorrectly represent in their February 13, 2026 letter that "[a]ttached to this letter are the Form I-200, Warrant of Arrest, dated January 31, 2026, the Form I-862, Notice to Appear[,] and [the] Form I-220A, Order of Release on Recognizance." (Resp. at 1.) However, Respondents failed to provide any of these records, notwithstanding the Court's February 13, 2026 Order to Show Cause, which clearly and unambiguously ordered Respondents to submit "all records material to resolution of this action." (ECF No. 3.) Nor did Respondents provide even a declaration from a witness with personal knowledge of the records they purported

---

[1] The Petition also seeks an order prohibiting Mr. Cadena-Gallegos's transfer from the New York City metropolitan area and an order requiring Respondents to show cause why the writ should not be granted within three days. (Pet. at 12.) The Court has effectively granted such relief through the issuance of a February 13, 2026 Order to Show Cause, which required Respondents to provide their response to the Petition by February 13, 2026 at 11:59 p.m., at the latest, and prohibited Respondents from removing Mr. Cadena-Gallegos from the United States or transferring him outside of the Eastern District of New York, Southern District of New York, and District of New Jersey absent further order of the Court. (*See* ECF No. 3.)

to attach to their letter response or any facts related to their asserted justification for detaining Mr. Cadena-Gallegos.

On February 14, 2026, this Court ordered Respondents to provide the referenced documents. (Feb. 14, 2026, Elec. Order.) which they ultimately did in a corrected letter that is identical to the February 13, 2026 letter, except that it attaches the identified records. (*See* ECF No. 8.) The record lacks any declaration from any witness explaining why Mr. Cadena-Gallegos was arrested and detained or addressing the records provided by Respondents.

Respondents assert that the facts of this case are similar to those at issue in another habeas petition resolved by this Court: *Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065 (E.D.N.Y.). (Resp. at 2 (explaining that Petitioner "is a citizen of another country who entered the United States without inspection, who has not been admitted, who has been detained pursuant to 8 U.S.C. § 1225(b)(2)(A)").) Accordingly, Respondents "adopt the Government's Memorandum of Law" filed by the respondents in *Rodriguez-Acurio*. (*Id*. (citing *Rodriguez-Acurio*, No. 25-cv-6065, ECF No. 14.).) Nonetheless, they acknowledge that *Rodriguez-Acurio* and several other habeas decisions by this Court "would control the result in this action if the Court adheres to those decisions." (*Id.*)

Respondents argue that ICE's detention of Mr. Cadena-Gallegos falls under Section 1225(b)(2), which governs the mandatory detention of certain noncitizens who are "seeking admission" to the United States. (Resp. at 1–2.) According to Respondents, Section 1225(b)(2) requires Mr. Cadena-Gallegos's detention, and he has no right to any additional process under the Due Process Clause. Respondents' position is that any noncitizen who entered the United States without authorization at any time is subject to detention under Section 1225(b)(2),

3

notwithstanding the fact that they have been residing in the interior of the country for months, if not years.

Respondents are incorrect for the reasons explained by this Court in *Rodriguez-Acurio v. Almodovar*, __ F. Supp. 3d __, No. 25-cv-6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025), *appeal docketed*, No. 26-219 (2d. Cir. Feb. 2, 2026), and that decision is incorporated by reference in its entirety in this Order.

Detention under Section 1225(b)(2) only applies to noncitizens who, among other things, are "seeking admission" to the United States. *Id*. at *22. Here, Mr. Cadena-Gallegos is not "seeking admission" because he clearly is not presenting himself at the border and was not recently apprehended just after entering this country. Rather, at the time that ICE detained him, Mr. Cadena-Gallegos had been living in the interior of the United States since around August 12, 2023. (Pet. ¶¶ 1–2.) He also has an application for asylum pending before the Varick Immigration Court. (Pet. ¶ 3.)

Respondents offer no new arguments to support their position that *any* non-citizen apprehended in the interior of the United States is subject to mandatory detention under Section 1225(b)(2). (*See* Resp. 1–3.) The vast majority of courts throughout this District, Circuit, and even the country have rejected Respondents' expansive interpretation of Section 1225(b)(2). *See Barco Mercado v. Francis*, __ F. Supp. 3d __, No. 25-cv-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("[T]he administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final

basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.").

The Second Circuit has not addressed whether Section 1225(b)(2) requires the detention of any non-citizen encountered by ICE in the interior of the United States, although several cases raising this issue are on appeal.[2] The Seventh Circuit recently suggested that Section 1225(b)(2) does not apply to noncitizens who are already residing in the United States. *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025).[3] The Fifth Circuit recently reached the opposite conclusion. *Buenrostro-Mendez v. Bondi*, __ F. Supp. 3d __, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026).

This Court has conducted its own careful assessment of the law and the facts. In the absence of Second Circuit precedent to the contrary, this Court continues to conclude, as set forth in detail in *Rodriguez-Acurio*, that Respondents' position that Section 1225(b)(2) requires the detention of a non-citizen apprehended in the interior of the United States notwithstanding

---

[2] *See, e.g.*, *Cunha v. Moniz*, 6:25-cv-6532 (W.D.N.Y. Nov. 25, 2025), *appeal docketed,* No. 25-3141 (2d. Cir. Dec. 12, 2025); *Chen v. Almodovar*, 1:25-cv-8350 (S.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3169 (2d. Cir. Dec. 17, 2025); *Candido v. Bondi*, No. 1:25-cv-867 (W.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3159 (2d. Cir. Dec. 17, 2025).

[3] In *Castanon-Nava*, the Seventh Circuit reasoned:

> [T]he mandatory detention provision upon which Defendants rely, limits its scope to an "applicant for admission" who is "seeking admission," § 1225(b)(2)(A). Put another way, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)."

161 F.4th at 1061 (emphasis in original, quoting *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)).

the fact that the non-citizen has continuously resided in this country for months, if not years, is unsupported by the statutory text.[4]

Moreover, nothing in the record shows that ICE arrested and detained Mr. Cadena-Gallegos under Section 1225(b)(2) rather than Section 1226(a). *See* ECF No. 8 at 4 (reflecting that Mr. Cadena-Gallegos was arrested on a warrant pursuant to "sections 236 and 287 of the Immigration and Nationality Act and part 287 title 8, Code of Federal Regulations," which correspond to 8 U.S.C. §§ 1226 and 1357 and 8 C.F.R. §§ 287.1–287.12, not 8 U.S.C. § 1225(b)(2)); ECF No. 8 at 8 (reflecting that Mr. Cadena-Gallegos was released on his own recognizance on August 14, 2023 pursuant to "section 236 of the [INA]," i.e., Section 1226, "and the applicable provisions of Title 8 of the Code of Federal Regulations"). Respondents only invoked Section 1225(b)(2) as the basis for Mr. Cadena-Gallegos's detention in the course of this litigation. (*See* Resp. at 1.) The Supreme Court has recognized that a "post-hoc rationalization" first articulated in litigation carries little weight. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal*, 591 U.S. 1, 21 (2020) (quoting *Citizens to Preserve Overton Park, Inc., v. Volpe*, 401 U.S. 402, 420 (1971)); *see also Islander E. Pipeline Co., LLC v. Connecticut Dep't of Env't Prot.*, 482 F.3d 79, 95 (2d Cir. 2006) ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."). As courts in the Southern District of New York have recognized, "the Court cannot credit Respondents' new position as to the basis for [petitioner's] detention, which was adopted post hoc and raised for the first time in this

---

[4] Respondents rely on *Saamishvili v. Flanagan*, et al., No. 25-cv-6178, 2026 WL 377574, at *3 (E.D.N.Y. Feb. 11, 2026), to support their expansive interpretation of Section 1225(b)(2) in this case. (Resp. at 2.) This Court respectfully disagrees with *Saamshvili* about the scope of Section 1225(b)(2). Additionally, the petitioner in that case was subject to an order of removal, and it is unclear whether the removal order was final such that a different INA provision—8 U.S.C §1231(a)(2)(A)—governed the petitioner's detention pending removal.

6

litigation." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025); *see also Yao v. Almodovar*, No. 25-cv-9982, 2025 WL 3653433, at *4 (S.D.N.Y. Dec. 17, 2025) (discrediting respondents' post-hoc justification for petitioner's detention and finding that "ICE is properly held to its representation, *when it detained* [petitioner], as to the legal basis for that action" (emphasis added)); *see Rueda Torres v. Francis*, No. 25-cv-8408, 2025 WL 3168759, at *5 (S.D.N.Y., 2025 Nov. 13, 2025) (slip copy) (same).

Accordingly, ICE's detention of Mr. Cadena-Gallegos is governed by the discretionary detention framework set forth in a different provision of the Immigration and Nationality Act, 8 U.S.C. § 1226(a). For the reasons explained in *Rodriguez-Acurio*, which are incorporated by reference here, Mr. Cadena-Gallegos has a liberty interest in being free from detention that is afforded procedural due process protection, notwithstanding Respondents' invocation of *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), and other cases. *See Rodriguez-Acurio*, 2025 WL 3314420, at *25–27 (finding that petitioner's situation is distinguishable from *Thuraissigiam* and that petitioner has a liberty interest that is afforded procedural due process protection).[5] ICE's detention of Mr. Cadena-Gallegos without notice and opportunity to be heard infringes on that liberty interest and triggers the right to procedural due process.

The balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976), applies to procedural due process claims and requires this Court to consider: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest

---

[5] Although the Respondents do not discuss *Thuraissigiam* in any way, because they incorporate their legal brief filed in opposition to the petition in *Rodriguez-Acurio*, this Court assumes they seek to rely on it.

7

through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Applying this balancing test, Respondents' detention of Mr. Cadena-Gallegos since January 31, 2026 violates his Fifth Amendment rights to procedural due process for the same reasons as those set forth in *Rodriguez-Acurio*.

Here, ICE's detention of Mr. Cadena-Gallegos without any notice or opportunity to be heard infringes on "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Moreover, there is a high risk of erroneous deprivation through the procedures used to detain Mr. Cadena-Gallegos because Respondents failed to provide *any* notice or any opportunity to be heard before a Department of Homeland Security officer or immigration judge before ICE detained him on January 31, 2026. (*See* Pet. ¶ 40.) Finally, Respondents fail to address any of the *Matthews v. Eldridge* factors, much less any government interests advanced by ICE's detention of Mr. Cadena-Gallegos without notice or an opportunity to be heard. Although the Attorney General may have a legitimate government interest in ensuring the appearance of noncitizens at immigration proceedings and preventing danger to the community, there is absolutely nothing in the record showing that Mr. Cadena-Gallegos presents a flight risk or danger to the community. Respondents fail to show that Mr. Cadena-Gallegos has any criminal history whatsoever. Moreover, Respondents submit an Order of Release on Recognizance reflecting that a DHS officer released Mr. Cadena-Gallegos on his own recognizance on August 14, 2023 on the conditions that he: (1) report for any hearing or interview as directed DHS or the Executive Office for Immigration Review; (2) report in person for a check-in scheduled in a separate document (referred to as an "OREC-56"), which Respondents failed to provide; (3) not violate

any local, State, or Federal laws or ordinances; (4) not change his residence without written permission from an immigration officer; and (5) assist DHS in obtaining necessary travel documents and surrender for removal if ordered. (ECF No. 8 at 8.) The Order of Release on Recognizance underscores that DHS determined Ms. Cadena-Gallegos posed no safety or flight risk as of August 14, 2023. (*Id.*) Respondents fail to show any change in circumstances since then. Rather, Mr. Cadena-Gallegos has lived in the United States since August 2023, has a pending asylum application, and was "participating in removal proceedings" prior to his detention. (Pet. ¶¶ 1–3, 34.)

Accordingly, weighing all of the *Mathews v. Eldridge* factors—the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to demonstrate that Mr. Cadena-Gallegos's detention was required to advance any legitimate government interest in preventing danger to the community or ensuring appearance at removal proceedings—Respondents' detention of Mr. Cadena-Gallegos with no notice or opportunity to be heard violates his Fifth Amendment rights to procedural due process. Thus, ICE's detention of Mr. Cadena-Gallegos was unlawful from its inception, notwithstanding Respondents' efforts at post-hoc rationalization based on its expansive interpretation of Section 1225(b)(2). *See Lopez Benitez*, 795 F. Supp. 3d at 486; *Rueda Torres*, 2025 WL 3168759, at *5.[6]

---

[6] Although Respondents do not explicitly invoke 8 U.S.C. § 1225(b)(1) as the basis for ICE's detention of Mr. Cadena-Gallegos, that provision is plainly inapplicable to him. Mr. Cadena-Gallegos is not subject to mandatory detention pending expedited removal as an "arriving alien" under Section 1225(b)(1)(A)(i). *See Rodriguez-Acurio*, 2025 WL 3314420, at *19. Nor do Respondents even argue, much less show, that he falls within any category of non-citizens who are designated by the Attorney General or their delegate as eligible for mandatory detention pending expedited removal under the statute's Designation Provision, 8 U.S.C § 1225(b)(1)(A)(iii). *See id.* at *15. Accordingly, ICE's detention of Mr. Cadena-Gallegos since January 31, 2026, is pursuant to the discretionary detention scheme of Section 1226(a), not the mandatory detention scheme of either Section 1225(b)(2) or Section 1225(b)(1).

Upon finding a constitutional violation, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice require." 28 U.S.C §§ 2241(a), 2243. Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). In *Rodriguez-Acurio*, this Court provided the legal basis for ordering release from ICE detention as well as limited injunctive relief enjoining Respondents from invoking Section 1225(b) as the basis for subjecting a non-citizen habeas petitioner to mandatory detention, absent a change in relevant circumstances. *See Rodriguez-Acurio*, 2025 WL 3314420, at *31–32.

For those same reasons, in this action, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, necessitates both the immediate release of Mr. Cadena-Gallegos from ICE custody and narrow injunctive relief guarding against re-detention in violation of this Court's determination that Mr. Cadena-Gallegos is not subject to mandatory detention under Section 1225(b). As in *Rodriguez-Acurio*, the limited grant of injunctive relief to guard against re-detention by ICE without a bond hearing on the basis of Section 1225(b)(2) absent a change in relevant circumstances falls within the "core of habeas," *Thuraissigiam*, 591 U.S. at 119, because it is necessary to ensure that the release of Mr. Cadena-Gallegos is not rendered meaningless.

Additionally, Mr. Cadena-Gallegos "is entitled to release from the unlawful restrictions on his liberty—which means, in the circumstances here, restoration of" the status quo ante. *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025) (ordering government to release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention] . . . including the ankle monitor and reporting requirements"). There is no evidence in the record showing that Mr. Cadena-Gallegos

was subject to any electronic monitoring requirements by ICE prior to his unlawful detention. Accordingly, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, and "restor[ing] . . . the status quo ante," *Khabazha*, 2025 WL 3281514, at *8, requires that Respondents release Mr. Cadena-Gallegos without any condition for electronic monitoring, including but not limited to GPS monitoring.

## CONCLUSION

Accordingly, for all of these reasons explained in this Memorandum and Order and those set forth in *Rodriguez-Acurio*, the Petition is granted in part.

Respondents must coordinate with Petitioner's counsel and thereafter release Petitioner, without any ankle monitor, into the physical care of their counsel or another mutually agreed upon person at the earliest possible time agreed upon by the parties, but no later than **today, February 14, 2026, at 3:00 p.m**. Respondents must release Petitioner with all of his belongings that are in Respondents' possession, including but not limited to identification cards, clothing, and money. Respondents shall confirm compliance with these directives, including by identifying the individual to whom Petitioner was released and when and how Mr. Cadena-Gallegos's belongings were returned to him, in a filing on the docket by **February 15, 2026 at noon**.

Additionally, pending the issuance of any final removal order against Mr. Cadena-Gallegos, Respondents are enjoined from denying Mr. Cadena-Gallegos bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances consistent with this Order.

The Court concludes that the other arguments set forth in the Petition for granting Mr. Cadena-Gallegos the requested relief, including arguments that the detention violates the Fifth

Amendment right to substantive due process and the APA, are now moot and unnecessary to resolve.

The Show Cause hearing scheduled for Tuesday, February 17, 2026 at 2:30 p.m. in the Alfonse D'Amato U.S. Courthouse is therefore adjourned. The matter is held in abeyance.

Dated: Central Islip, New York
      February 14, 2026

                                                                                  */s/ Nusrat J. Choudhury*
                                                                                   NUSRAT J. CHOUDHURY
                                                                                   United States District Judge